IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

**TYASIA GUADALUPE, on behalf of herself
and all others similarly situated,**

                     **Plaintiff,**

                                         **Case No. 1:16-CV-967-SS**

**-vs-**

**AMERICAN CAMPUS COMMUNITIES
SERVICES, INC.,**

                     **Defendants.**

___

## DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY IN SUPPORT OF SECOND MOTION FOR CERTIFICATION OF A COLLECTIVE ACTION

ACC submits this sur-reply[1] in response to Plaintiff's Reply in support of her Second Motion for Certification of a Collective Action (Dkt. No. 81). As outlined in ACC's Opposition (Dkt. No. 78), Plaintiff's Motion (Dkt. No. 73) fails to make the showing necessary to justify conditional certification under the *Lusardi* approach[2] to FLSA certification, namely that: (1) a single, uniform policy exists that violates the FLSA; (2) aggrieved employees are similarly situated; and (3) aggrieved individuals wish to opt-in to the lawsuit. (Dkt. No. 78 at 2-4, 9-20.) Plaintiff's Reply fails to remedy these deficiencies.

<u>First</u>, Plaintiff's Reply does not establish the existence of a single, uniform policy that violates the FLSA. In her Motion, Plaintiff argued that ACC maintains a single, uniform policy requiring Community Assistants ("CAs") reside on-site where they work, and that such policy violates the FLSA. (Dkt. No. 73-1 at 5.) In its Opposition, ACC sufficiently rebutted this argument by demonstrating ACC does not have a residency requirement for CAs working at

___

[1] Although the Local Rules do not allow for a sur-reply (see CV 7-1(f)), this Court's Fact Sheet at paragraph 32 states that such papers may be filed without leave if appropriate.

[2] *Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987).

properties for which no lodging credit is taken against wages, and regardless any such policy would not violate the FLSA. (Dkt. No. 78 at 9-16.)[3] Plaintiff's Reply attempts to breathe new life into the residency requirement claim by relying on "additional ACC documents" (Dkt. No. 81 at 2), arguing such establish the existence of a uniform residency requirement. (Dkt. No. 81 at 2.) But the Court should reject this tactic for two reasons: (1) it is inappropriate to include additional supporting materials on reply that were not included in the underlying motion, especially when Plaintiff was in possession of the "additional ACC documents" at the time she filed her Motion (*Racetrac Petroleum, Inc. v. J.J.'s Fast Stop, Inc.*, No. Civ. A. 3:01-CV-1397, 2003 WL 251318, *18 (N.D. Tex. Feb. 3, 2003); *Springs Indus., Inc. v. American Motorists Ins. Co.*, 137 F.R.D. 238, 240 (N.D. Tex. 1991));[4] and (2) the documents do not establish any uniform policy violating the FLSA. The new documents relied upon include: (1) CA interview questions (Dkt. Nos. 81 at 3, 82-1), (2) CA training forms and presentations (Dkt Nos. 81 at 3-4, 81-1, 82-2, 82-3, 82-4, 82-5), (3) various versions of the ACC handbook (Dkt. Nos. 81-2, 81-3, 81-4, 81-5, 81-6, 81-7, 81-8), and (4) a CA achievement survey (Dkt. Nos. 83-9, 83-10). On their face, these documents do not discuss a residency requirement. They instead refer to CAs as role models, community leaders, and require CAs to follow a particular course of conduct when on-site. (Dkt. No. 81 at 3-5.) Stating that a CA should be a role model for residents, or not be intoxicated while working, does not create a residency requirement. Rather, such unremarkably mirror the same types of policies governing employee conduct set out by virtually all employers.

Second, rather than address ACC's evidence demonstrating that individualized inquiries predominate over Plaintiff's claims, Plaintiff's Reply underscores the point. For example, the new documents Plaintiff now relies upon do not contradict the plain and unambiguous policy

---

[3] Plaintiff claims ACC and its declarants "fail to discuss" the purported residency requirement in the Opposition. (Dkt. No. 81 at 2.) ACC discussed Plaintiff's argument at length, and each declarant discusses the purported residency requirement, or lack thereof, directly.

[4] A sur-reply is appropriate where the movant introduces new supporting materials on reply. See *Pennsylvania General Ins. Co. v. Story*, No. Civ. A. 3:03-CV-0030-G, 2003 WL 21435511, *1 (N.D. Tex. Jun. 10, 2003); *Jackson v. Dallas County Juvenile Probation Dept.*, No. 3:06-CV-264-M (BH), 2007 WL 2187250, *4 (N.D. Tex. Jul. 30, 2007).

change by ACC in 2014 to no longer require CA residency. Instead, Plaintiff argues that other policies related to how CAs are to conduct themselves somehow reveal an unstated residency requirement. In effect, Plaintiff's argument is one of perception, to suggest CAs and/or others *perceive* that residency is required. (Dkt. No. 81 at 4.) But relying on perceptions or impressions results in the exact type of individualized inquiry precluding conditional certification. (See Dkt. No. 78 at 18-19). One CA's impression about whether residency is required may be different than the next. This is especially so given ACC's evidence that former and current CAs largely report they are or were not required to live on-site as a CA job requirement and do not believe living on-site is necessary to complete the job of the CA. (Dkt. Nos 78 at 3, 78-1 at 6-178.) Plaintiff also fails to adequately address the individualized inquiry underpinning two critical liability questions: (1) whether the lodging is primarily for the benefit of a particular CA; and, (2) whether CAs engaged in a wage kickback. With regard to the former, Plaintiff concedes there is a presumption that lodging is ordinarily for the benefit of the employee (Dkt. No. 81 at 9-10), but argues this presumption is overcome because ACC appeared at public hearings and "tout[ed] that its employees will live at the job site[.]" (*Id.*)[5] ACC thoroughly addressed this argument in its Opposition. (Dkt. No. 78 at 13-15.) This argument also fails to appreciate that certain CAs may see the residency as a benefit for them, while others may not choose to reside on-site; all underscoring that there exists a choice. (Dkt. No. 78-1 at 6-178.) Again, this introduces myriad individualized inquiries. Plaintiff also misconstrues the individualized nature of the kickback liability question. Without any cite to authority, Plaintiff claims that when a CA signs a lease, a kickback occurs. (Dkt. No. 81 at 5.) But Plaintiff ignores a fundamental liability question that will require an individualized inquiry - it cannot be a kickback of wages in violation of the FLSA if a CA does not pay rent with CA wages, thus with what funds does a given resident CA pay rent? See 29 CF.R. § 531.35 (a "kickback" is when the employee returns the "whole or part of

---

[5] Plaintiff claims ACC's Opposition raises issues not disclosed in discovery. (Dkt. No. 81 at 6.) ACC adequately responded to Plaintiff's discovery requests, disclosed the number of CAs at particular sites, and Plaintiff has yet to make any request to meet and confer on those responses notwithstanding the fact that responses were provided in September 2017.

3

the wage delivered to the employee."). A number of declarants testified that they do not pay their ACC rent with ACC wages. (Dkt. No. 78 at 18.)

Finally, Plaintiff claims she need not submit a single opt-in to satisfy the third *Lusardi* showing. (Dkt. No. 81 at 7-8.) For support, Plaintiff cites *Dyson v. Stuart Petroleum Testers, Inc.*, 308 F.R.D. 510 (W.D. Tex. 2015) and *Ferguson v. Tex. Farm Bureau Bus. Corp.*, No. 6:17-CV-00111, 2017 WL 7053928 (W.D. Tex. Dec. 11, 2017). (*Id.*) But both cases are off the mark here. In *Dyson*, the plaintiff submitted at least one additional opt-in. *Dyson*, 308 F.R.D. at 513. In *Ferguson*, the plaintiff submitted six. *Ferguson*, 2017 WL 7053928 at *6. Plaintiff has submitted zero. Moreover, in *Dyson*, the plaintiff did not complete any discovery prior to submitting the motion for conditional certification. *Dyson*, 308 F.R.D. at 513. Plaintiff obtained substantial discovery before filing her motion.[6] (Dkt. No. 81 at 2.) Plaintiff filed this suit over two years ago. (Dkt. No. 1.) Her lack of opt-ins demonstrate her inability to satisfy the third *Lusardi* showing.

For these reasons, and as set forth more fully in ACC's Opposition (Dkt. No. 78), Plaintiff's Motion (Dkt. No. 73) must be denied.

DATED: April 2, 2018

Respectfully submitted,

**DENTONS US LLP**

*s/James S. McNeill*
**JAMES S. MCNEILL**
admitted *pro hac vice*
California Bar No. 201663
4655 Executive Drive, Suite 700
San Diego, CA  92121
Telephone:  (619) 236-1414
Facsimile:  (619) 232-8311
Email:  jim.mcneill@dentons.com

**STUART E. BLAUGRUND**
Texas Bar No. 02473350
2000 McKinney Avenue , Suite 1900
Dallas, TX  75201
Attorneys for Defendants
Telephone:  (214) 259-1881
Facsimile:  (214) 259-0910
Email:  stuart.blaugrund@dentons.com

---

[6] Plaintiff attempts to minimize this fact by saying only "some discovery" has been concluded, and that "numerous, unresolved objections" remain. (Dkt. No. 81 at 2, fn. 1.) Plaintiff served 11 Interrogatories, 165 Requests for Production, and 56 Requests for Admission in July and August 2017. (Dkt. No. 78-1 at 99, Declaration of James S. McNeill at ¶16.) ACC has produced over 17,000 pages of documents in response to Plaintiff's written discovery. (*Id.*) Plaintiff has yet to request to meet and confer concerning the adequacy of those responses, objections, and production.

**CERTIFICATE OF SERVICE**

  I hereby certify that on April 2, 2018, I electronically filed the foregoing **DEFENDANT'S SUR-REPLY TO PLAINTIFF'S REPLY IN SUPPORT OF SECOND MOTION FOR CERTIFICATION OF A COLLECTIVE ACTION** with the Clerk of Court using the CM/ECF system, which will send a notification of such filing/service (NEF) to the following:

  Joshua M. David (VSB N. 41386)
  jdavid@davidkampfrank.com
  Nicholas A. Nutes (VSB No. 77947)
  nanunes@davidkampfrank.com
  DAVID, KAMP & FRANK, L.L.C.
  739 Thimble Shoals Blvd., Suite 105
  Newport News, VA  23606
  Telephone:  757.595.5600
  Facsimile:  757.595.6723

  Charles L. Scalise
  charles@rosslawgroup.com
  The Ross Law Group
  1104 San Antonio Street
  Austin, TX 78701
  Telephone:  (512) 474-7677
  Facsimilie:  (512) 474-5306

               *s/James S. McNeill*

106956580\V-3