## SETTLEMENT AGREEMENT

This settlement agreement (this "Agreement") is made and entered into by and between named plaintiff, Tyasia Guadalupe ("Guadalupe"), individually and on behalf of all Opt-In Plaintiffs (as defined herein), by and through her counsel of record, and defendant, American Campus Communities Services, Inc. ("ACC"). This Agreement is being entered into as a compromise between Guadalupe, on her own behalf and on behalf of the Opt-In Plaintiffs, and ACC, all of whom intend for this Agreement to resolve, discharge and settle the claims released in this Agreement, fully, finally, and forever, according to the terms and conditions set forth herein.

### I.

### DEFINITIONS

1.      "ACC" means American Campus Communities Services, Inc., provided that for purposes of this release hereunder, "ACC" shall also refer to such entity's current and former parents, subsidiaries, sister companies and/or affiliated companies, and its current and former shareholders, officers, directors, members, predecessors, trustees, advisors, consultants, partners, administrators, employees, agents, insurers, reinsurers, representatives, and attorneys of all of the foregoing and their respective heirs, executors, administrators, successors, and assigns, in any and all capacities.

2.      "Action" means the lawsuit Guadalupe instituted on November 6, 2015, by filing a putative collective action complaint in the United States District Court for the Eastern District of Virginia, which was transferred to the United States District Court for the Western District of Texas on August 12, 2016, titled *Guadalupe, on behalf of herself and all others similarly situated v. American Campus Communities Services, Inc., et al.*, Civil Action No. 1:16-CV-00967-SS.

3.      "Attorneys' Fees" means the attorneys' fees to be paid from the Settlement Amount and as provided for in this Agreement and approved by the Court.

4.      "Consent Form" means the Consent to Join Collective Action form filed by each Opt-In Plaintiff in the Action.

5.      "Court" means the United States District Court for the Western District of Texas.

6.      "Defendant's Counsel" means Dentons US LLP.

7.      "Effective Date" means the day that the Final Order is entered by the Court.

8.      "Expenses of Litigation" means the costs and expenses of bringing, prosecuting, maintaining, and settling the Action incurred or advanced or to be incurred or advanced by

Plaintiffs' Counsel, including all costs and expenses incurred in connection with administering the Settlement Amount, all to be paid from the Settlement Amount and as provided for in this Agreement and approved by the Court.

9.      "FLSA" means the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201, *et seq.*

10.     "Approval Hearing" means the hearing, if any, during which the Court will consider the Motion and be asked by the Parties to enter the Proposed Final Order.

11.     "Motion" means the  Motion for Approval of Settlement of Fair Labor Standards Act Collective Action to be filed by Plaintiffs seeking approval of the parties' settlement as set forth in this Agreement.

12.     "Opt-In Plaintiffs" means all of the persons for whom a Consent Form was filed in the Action.  The term "Opt-In Plaintiff" is used to refer to one of the Opt-In Plaintiffs.

13.     "Parties" means collectively the Plaintiffs and ACC.

14.     "Plaintiffs" means, collectively, Guadalupe and the Opt-In Plaintiffs.  The term "Plaintiff" is used to refer to one of the Plaintiffs.

15.     "Plaintiffs' Counsel" means David, Kamp & Frank, L.L.C. and Ross Law Group.

16.     "Proposed Final Order" means the order that, if entered by the Court, would fully and finally grant approval of the settlement under this Agreement and dismiss the Action with prejudice.  If the Proposed Final Order is entered by the Court, it shall be considered the "Final Order."

17.     "Service Payment" means the portion of the Settlement Fund to be paid to Guadalupe for her service to the other Opt-In Plaintiffs in originating and prosecuting the Action, excluding payment for her individual claims, in the amount of Twelve Thousand Five Hundred Dollars ($12,500) or such other amount as may be approved by the Court.

18.     "Settlement Administrator" means Simpluris or another qualified and reputable settlement administration firm selected by Plaintiffs' Counsel.

19.     "Settlement Amount" or "Settlement Fund" means One Million Five Hundred Thousand Dollars ($1,500,000).

20.     "Settlement Class" means all Plaintiffs who the Court orders will be bound by this Agreement.

21.     "Settlement Payment" means the portion of the Settlement Fund to which an individual member of the Settlement Class is entitled pursuant to the Agreement.

## II.

## RECITALS

22.     **WHEREAS**, on November 6, 2015, Guadalupe instituted this Action against ACC.

23.     **WHEREAS**, Guadalupe, on behalf of herself and all others similarly situated, has asserted a cause of action for, among other things, alleged improper wage deductions and a failure to pay for all hours worked at the minimum wage in violation of 29 U.S.C. § 206 of the FLSA, and failure to pay overtime at the proper rate as required by 29 U.S.C. § 207.

24.     **WHEREAS**, the Court has conditionally certified the Action as a collective action under 29 U.S.C. § 216(b) of the FLSA.

25.     **WHEREAS**, ACC denies any wrongdoing or liability of any kind whatsoever regarding the claims in the Action and disputes that the class is properly certified.

26.     **WHEREAS**, Plaintiffs' Counsel has been counsel of record for Plaintiffs and Plaintiffs' Counsel has conducted a thorough investigation and evaluation of the facts in this Action, including those contained in numerous relevant documents and otherwise in response to written discovery, and has diligently pursued an investigation of Plaintiffs' claims against ACC. Based on this thorough investigation and evaluation, Plaintiffs' Counsel believes that this settlement with ACC for the consideration and pursuant to the terms set forth herein is fair, reasonable, adequate, and in the best interests of the Plaintiffs considering all of the known facts and circumstances, including the number of Plaintiffs who opted in to this Action, the complexity and likely duration of the litigation, the range of possible recovery, and the defenses ACC has asserted.

27.     **WHEREAS**, Defendant's Counsel and Plaintiffs' Counsel have vigorously pursued their positions and the rights of their clients through extended legal and factual analysis, exchange of information, and settlement discussions and mediation to achieve a compromise and settlement of the claims asserted in this Action.  In participating in the mediation of the Action, which was presided over by the Honorable Linda Thomas, Retired Chief Justice of the Fifth District Court of Appeals, in Dallas, Texas, all counsel engaged in good faith, arm's-length discussions and the negotiations were adversarial and non-collusive.

28.     **WHEREAS**, this Agreement, as well as any other documents, statements, representations, or conduct related to the mediation of this Action or this Agreement, shall not be

construed, deemed, received, offered or admitted into evidence for any purpose adverse to ACC or Plaintiffs (other to enforce this Agreement).

29.     **WHEREAS**, this Agreement contains all of the agreements between Plaintiffs, ACC, and their respective counsel relating to the settlement of this Action.  There are no undisclosed agreements between the Parties or their counsel.

## III.

## APPROVAL PROCESS

30.     This Agreement is final and effective subject only to the Court approving the settlement and this Agreement in its entirety and entering Final Judgment.

31.     Plaintiffs' Counsel will provide an initial draft of the Motion and Proposed Final Order to Defendant's Counsel.  Defendant's Counsel shall promptly review and propose changes to these documents.  All counsel will use their best efforts and cooperate in good faith to agree on the final version of these documents to be filed with the Court.

32.     Following agreement on the content of the Motion and the Proposed Final Order, Plaintiffs' Counsel shall file said documents with the Court and may represent to the Court that ACC has no objection to the Motion and Proposed Final Order.

## IV.

## SETTLEMENT AMOUNT AND ALLOCATION

33.     Subject to Court approval, the Settlement Amount shall be used to pay: (a) the Settlement Payments; (b) the Attorneys' Fees; (c) the Expenses of Litigation; and (d) the Service Payment to Guadalupe.

34.     Each Settlement Payment to be made to each member of the Settlement Class shall be determined by Plaintiffs' Counsel.  Defendant's Counsel and ACC are not responsible for Settlement Payment calculations and cannot be held liable for such calculations.

35.     Each member of the Settlement Class shall receive a Settlement Payment from the Settlement Fund based upon an estimate by Plaintiffs' Counsel of each Plaintiffs' potential damages in the Action and each such Plaintiffs' corresponding pro rata amount of the total Settlement Payments.  The estimate performed by Plaintiffs' Counsel will discount certain classes of damages, such as those for periods of time that may be barred by the FLSA's statute of limitation but for a showing that ACC "willfully" violated the FLSA.  The estimate also allocated to each Plaintiff a minimum amount of $100.

36.     One-half of the Settlement Payment for each member of the Settlement Class will be treated as payment to compromise Plaintiffs' claims for wages and the one-half will be treated as payment to compromise Plaintiffs' claims for liquidated damages under the FLSA.

37.     Plaintiffs' Counsel shall provide ACC with an updated "last known" United States mailing address for each individual Plaintiff.  ACC will update the Plaintiffs' addresses and will withhold taxes as detailed below based upon the state of residence listed in the chart provided by Plaintiffs' Counsel.

38.     ACC agrees to issue the Settlement Amount as follows: (a) ACC will prepare and deliver to Plaintiffs' Counsel by overnight delivery, for distribution to the Plaintiffs, individual checks to each Plaintiff for the portion of the Settlement Payment allocated to "wages," in amounts determined by Plaintiffs' Counsel as set forth above (the "Wage Checks"), with ACC paying the employer's share of payroll taxes and deducting the employee's share of payroll taxes and withholding as required by law as if the Plaintiffs were still employed by ACC and residing at the addresses referenced above; (b) ACC will issue a check to David, Kamp & Frank, LLC and a check to Ross Law Group for Attorneys' Fees and for Expenses of Litigation as directed by Plaintiffs' Counsel consistent with provisions of this Agreement; and (c) ACC will issue one check for the remainder of the Settlement Payment to the Settlement Administrator for the remaining distributions to Plaintiffs (including the Service Payment to Guadalupe).  ACC will issue the Wage Checks within forty-five (45) days after the later of the Effective Date of this Agreement or Plaintiffs' Counsel providing the totals for the Settlement Payments allocated to "wages."  ACC will issue the checks for Attorneys' Fees and for Expenses of Litigation and for the remaining Settlement Payments at the same time.

39.     If an individual Plaintiff is still employed by ACC and registered for direct deposit, ACC may provide that individual with their Wage Check via direct deposit.  In the event that ACC pays any current employee by direct deposit, ACC will:  (a) confirm in writing to Plaintiffs' Counsel the names of the Plaintiffs paid by direct deposit and the date of such payment(s); and (b) provide such Plaintiffs' IRS Form W-2s directly to such Plaintiffs.

40.     Plaintiffs' Counsel shall mail to each member of the Settlement Class, at his or her last known address, the Wage Check to which the Settlement Class member is entitled.  If a Wage Check is returned to Plaintiffs' Counsel as undeliverable, Plaintiffs' Counsel will use

reasonable efforts to locate a current address for the Settlement Class member and re-mail the check.

41.     ACC will reissue any Wage Check that it has issued that is lost or stolen upon request by Plaintiffs' Counsel, provided that any bank charge to stop payment on such lost or stolen check may be deducted from the reissued check.

42.     The Settlement Administrator will prepare and mail to each member of the Settlement Class, at his or her last known address, a check for the portion of the remainder of the Settlement Payment to which the Settlement Class member is entitled.  If any such check is returned as undeliverable, Plaintiffs' Counsel and the Settlement Administrator will use reasonable efforts to locate a current address for the Settlement Class member and re-mail the check.

43.     ACC will prepare and deliver to Plaintiffs' Counsel an IRS Form W-2 for each Plaintiff reporting the payment to each such Plaintiff allocated to "wages" in accordance with and when required by law.  The payment of Attorneys' Fees and for Expenses of Litigation will reported solely to David, Kamp & Frank, LLC and Ross Law Group, and ACC will prepare a Form 1099 for the payment received by each firm from ACC.  David, Kamp & Frank, LLC and Ross Law Group will each provide a Form W-9 to ACC.  As the Settlement Administrator will be responsible for issuing a Form 1099 to each member of the Settlement Class for payments distributed by the Settlement Administrator, no other tax reporting will made by ACC.  To facilitate the Settlement Administrator's issuance of Form 1099s to Plaintiffs, within fourteen (14) days of the full execution of this Agreement, ACC will provide to Plaintiffs' Counsel an Excel spreadsheet that contains the names of all Plaintiffs and, to the extent available to ACC, identifies the social security number for each.  For clarity, ACC will not be in breach of this Agreement in the event that it no longer has access to one or more of the Plaintiffs' social security numbers and/or experiences delay in locating one or more of the Plaintiffs' social security numbers.

44.     With respect to the portion of the Settlement Payment that will be reported on a Form 1099: (a) Plaintiffs understand and agree that they are responsible for all applicable taxes due by them, if any, as a result of their receipt of this portion of the Settlement Payment; (b) Plaintiffs further understand and agree that ACC is providing them with no representations regarding tax obligations, advice, or consequences that may arise from this Agreement.

45.     Payments made in connection with this Agreement may have tax consequences for which, except as set forth specifically herein, Plaintiffs are solely, and individually responsible.

Neither ACC nor Defendant's Counsel shall be responsible or liable for any tax or any other financial consequences of this Agreement or any Settlement Payment, except as set forth specifically herein.  Neither ACC nor Class Counsel express any opinion concerning tax or economic consequences of settlement or receipt of damages by Plaintiffs and make no warranties or other assurances regarding tax or economic consequences.  In the manner provided for in this Agreement, ACC and the Settlement Administrator, will report to federal and state tax authorities including the IRS payments made in connection with this Agreement.

46.     Plaintiffs' Counsel may provide a list to ACC, through Defendant's Counsel, of the name of Plaintiffs whose Wage Checks Plaintiffs' Counsel believes may not have been cashed within the one-year period following issuance.  If a list is so provided, ACC will determine whether the identified Wage Checks have been cashed and inform Plaintiffs' Counsel, as to each check, of either the date it was cashed or that it remains uncashed.  Plaintiffs' Counsel may then, at their option, ask ACC to re-issue such outstanding Wage Checks, in which event, ACC will stop payment on such Wage Checks and re-issue such Wage Checks to Plaintiffs' Counsel made payable to David, Kamp & Frank, L.L.C.  It shall then be the sole responsibility of Plaintiffs' Counsel to see to the disposition of such funds, and ACC shall have no responsibility therefor.

## V.

## CLAIMS ADMINISTRATION

47.     The Parties agree that Plaintiffs' Counsel, assisted by the Settlement Administrator, will administer the settlement, and, in so doing, shall be responsible for: (a) calculating the portion of the Settlement Payment due to each member of the Settlement Class; (b) researching and updating addresses for each Plaintiff; (c) responding to inquiries made by Plaintiffs relating to the status of the administration of the settlement; (d) mailing the Settlement Payments and tax forms to members of the Settlement Class; and (e) performing such additional duties as become necessary for the administration of this settlement.  ACC is not responsible for payment of the Settlement Administrator.

## VI.

## ATTORNEYS' FEES AND EXPENSES

48.     In the Motion, including by reference to this Agreement, Plaintiffs' Counsel will request approval of an award of attorneys' fees of up to forty percent (40%) of the Settlement Fund

and for payment or reimbursement of the Expenses of Litigation.  Neither ACC nor Defendant's counsel will make any objection to Plaintiffs' Counsel's request for fees and expenses.

49.     The Attorneys' Fees will be allocated ninety percent (90%) to David, Kamp & Frank, L.L.C. and ten percent (10%) to Ross Law Group.  The Expenses of Litigation will be allocated as directed by Plaintiffs' Counsel.

50.     Any payments made for Attorneys' Fees and Expenses of Litigation shall be the full, final, and complete payment of all attorneys' fees and costs arising from or relating to the representation of the Plaintiffs and any other attorneys' fees and costs, including those associated with the investigation, discovery, prosecution, or settlement administration of this Action.

51.     Except as permitted hereby, Guadalupe and Plaintiffs' Counsel warrant and represent that they will not, nor will any of their employees, agents, or representatives file any claims for attorneys' fees or costs, including, but not limited to, bills of costs or requests for attorneys' fees, for any fees or costs arising out of this Action in any manner whatsoever and hereby irrevocably and forever discharge ACC of any liability for such fees and costs.  Guadalupe and Plaintiffs' Counsel warrant that they know of no attorneys other than Plaintiffs' Counsel who are owed fees arising out of this Action, for which ACC could be liable.

52.     Nothing herein shall be construed to preclude Plaintiffs' Counsel from appealing the Court's decision on the approval of Attorneys' Fees and Expenses of Litigation and/or the Service Award, if applicable.

## VII.

## RELEASE

53.     The effect of the dismissal of the Action with prejudice shall be, for each of the Settlement Class members, to forever waive and release ACC from all of the claims raised in the Amended Complaint filed in the Action and those reasonably related to the claims asserted in the Action (the "Released Claims").  The Plaintiffs agree the Final Judgement in this Action shall have the effect of dismissing this Action with prejudice, and barring the Released Claims from further adjudication.

54.     Plaintiffs expressly waive and release any and all provisions, rights and benefits conferred by Section 1542 of the California Civil Code, which reads:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF**

**EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

Each of Plaintiffs similarly waives any and all rights and benefits conferred by any law of any state or territory of the United States or any other jurisdiction or principle of common law, which is similar, comparable or equivalent to Section 1542 of the California Civil Code. Each of Plaintiffs may hereafter discover facts other than or different from those which he or she knows or believes to be true with respect to the Released Claims, but each of Plaintiffs hereby expressly waives and fully, finally, and forever settles and releases, upon the Effective Date, any known or unknown, suspected or unsuspected, contingent or non-contingent claim that would otherwise fall within the definition of Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

55.     On the Effective Date and to the extent permitted by applicable law and authorized by the settlement procedure set forth in this Agreement, the members of the Settlement Class shall be deemed to have fully, finally and forever settled and released any and all of the Released Claims, regardless of whether the members of the Settlement Class hereafter discover facts in addition to or different from those they know of or believe to be true concerning the Released Claims.

56.     Plaintiffs covenant not to sue, directly or indirectly, ACC with respect to any of the Released Claims. Plaintiffs shall forever be barred and enjoined from directly or indirectly filing, commencing, instituting, prosecuting, maintaining, joining, or intervening in any action, suit, cause of action, arbitration, claim, demand, or other proceeding in any jurisdiction, or before any tribunal or administrative body whether in the United States or elsewhere, on their own behalf or in a representative capacity, that is based upon or arises out of any of the Released Claims.

57.     The Parties acknowledge and agree that they each have been represented by legal counsel at all pertinent times to this Action and acknowledge that they have had sufficient time to consider this Agreement and consult with legal counsel, and any other counsel, of their choosing concerning the import and meaning of the provisions herein. Each Party executes this Agreement freely, voluntarily, knowingly, and without threat of coercion, duress, or promise of future compensation not specifically enumerated herein. Each Party has relied on his or her legal counsel's advice in deciding to execute this Agreement. Neither Party has relied on any representations, promises or warranties other than those for which this Agreement expressly provides.

## VIII.

## ANTI-RETALIATION

58.     ACC understands that Section 15(a)(3) of the FLSA makes it unlawful to "discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

## IX.

## NO ADMISSION OF LIABILITY

59.     This Agreement is a compromise of disputed claims.

60.     This Agreement is not intended to be and shall not be construed as an admission of liability by ACC on any issue in the Action or any other action or that Plaintiffs have any rights whatsoever against ACC and ACC specifically denies any liability and wrongful acts against the Plaintiffs or anyone.

61.     This Agreement is not an adjudication on the merits of the Action or any other matters subject to release hereunder.  The Parties agree that neither of them has prevailed on the merits.

## X.

## EFFECT OF COURT'S DECISION TO NOT APPROVE
## THE SETTLEMENT AS WRITTEN

62.     If the Court does not approve this Agreement as written, the Parties agree to cooperate in good faith to revise the Agreement to address the Court's concerns, if possible, and to resubmit the revised Agreement to the Court for approval.

63.     The Parties shall fully cooperate with each other and use their best efforts to accomplish the terms of this Agreement including, but not limited to, execution of such documents and to take such other actions as may be reasonably necessary to implement the terms of this Agreement.

64.     If, however, the Parties, acting in good faith, cannot agree on a revision of the Agreement to address the Court's concerns, then the Agreement shall not be binding upon either Party.  In such event, the Parties will retain all rights and defenses in the Action, and all negotiations and information and materials pertaining in any manner whatsoever to this

Agreement, Settlement, or the mediation of this Action shall be inadmissible for all purposes and shall have no probative value.

## XI.

## **FAIR, ADEQUATE, AND REASONABLE SETTLEMENT**

65.    The Parties agree that the settlement and this Agreement are fair, adequate, and reasonable and will represent this fact to the Court.

## XII.

## **ENFORCEMENT ACTIONS**

66.    Any Party may institute a legal action or other proceeding to enforce the provisions of this Agreement or to declare rights and/or obligations under the Agreement.

## XIII.

## **NOTICES**

67.    All notices, requests, instructions, consents, and other communications to be given pursuant to this Agreement shall be in writing by email and the street address below and shall be deemed received (i) on the same day if delivered in person or by same-day courier; (ii) on the same day if delivered by fax; (iii) on the next day if delivered by overnight mail or courier; or (iv) on the date indicated on the return receipt or, if there is no such receipt, on the third calendar day (excluding Sundays), if delivered by certified or registered mail, postage pre-paid, to the party to whom it was addressed.  All such notices, requests, instructions, consents or other communications shall be sent to the persons and at the addresses listed below:

If to Plaintiffs' Counsel or Plaintiffs:

Joshua M. David, Esq.
Nicholas A. Nunes, Esq.
Emails: jdavid@davidkampfrank.com;
nanunes@davidkampfrank.com
David, Kamp & Frank, L.L.C.
739 Thimble Shoals Blvd., Suite 105
Newport News, VA  23606
Fax:  (757) 595-6723

If to ACC:

Leanna Anderson, Esq.

Email: leanna.anderson@dentons.com
Dentons US LLP
2000 McKinney Ave, Suite 1900
Dallas, TX  75201
Fax:  (214) 259-0910

Each Party may, by written notice given to the other in accordance with this Agreement, change the address to which notices to the above individuals are to be delivered.

## XIV.

## EXECUTION; CONSTRUCTION

68.     This Agreement shall be deemed fully executed on the last date of execution on behalf of the Parties.

69.     This Agreement has been negotiated at arms-length and should be construed as having been drafted jointly by all the parties.

## XV.

## ENTIRE AGREEMENT, CAPTIONS AND INTERPRETATIONS

70.     This Agreement constitutes the entire understanding and agreement between the Parties hereto with respect to the transaction contemplated herein and supersedes all prior and contemporaneous agreements, whether oral or written, of the parties.

71.     Paragraph titles or captions in this Agreement are inserted only as a matter of convenience and for reference, and in no way define, limit, extend, or describe the scope of this Agreement or any of its provisions.

## XVI.

## COUNTERPARTS; ELECTRONIC SIGNATURE

72.     This Agreement may be executed in counterparts and shall be binding upon all parties hereto as if all signatures had been affixed on a single original hereof.

73.     A signature reproduced, imaged, or transmitted by facsimile, email, or other electronic means shall be considered to be the same as an original signature hereon.

## XVII.

## FORCE MAJEURE

74.     The Parties shall not be liable for any delay or non-performance of the obligations under this Agreement arising from an Act of God, governmental act, technology malfunction beyond their control, an act of terrorism, war, fire, flood, explosion, pandemic, or civil commotion.

## XVIII.
## NO WAIVER, AMENDMENT OR MODIFICATION

75.    Any Party to this Agreement may waive any of the terms or conditions of this Agreement, or agree to an amendment or modification of this Agreement, only by an agreement in writing and executed in the same manner (but not necessarily by the same persons) as this Agreement.  No amendment or modification of this Agreement shall be binding unless in writing and executed by the party amending or waiving such term of condition of this Agreement.  No waiver of any of the provisions of this Agreement shall be deemed or shall constitute a waiver of any other provision hereof (whether similar or not similar), nor shall any waiver constitute a continuing waiver unless otherwise expressly provided therein.  The failure of any party hereto to enforce at any time any provision of this Agreement shall not be construed to be a waiver of such provision, nor in any way to affect the validity of this Agreement of any part hereof, or the right of any party hereto thereafter to enforce each and every provision of this Agreement.

## XIX.
## SUCCESSORS; ASSIGNMENT; BEST EFFORTS

76.    This Agreement shall be binding upon and inure to the benefit of the Parties hereto, as well as to their respective heirs, personal representatives, successors and assigns.  No Party may assign its obligations hereunder.  The Parties hereto shall use their best efforts to carry out the settlement provided for herein and shall execute all further documents reasonably necessary to do so.

## XX.
## SEVERABILITY

77.    If any portion of this Agreement is held invalid by operation of law, the remaining terms of this Agreement shall not be affected and shall continue in full force and effect.

## XXI.
## APPLICABLE LAW AND JURISDICTION

78.    To the extent not governed by federal law, this Agreement shall be governed by and construed in accordance with the laws of Texas without regard to conflicts of laws rules.

79.    The parties agree that all disputes regarding the terms of this Agreement, except where the parties have specifically provided for resolution by arbitration, shall be submitted to the

United States District Court for Western District of Texas, and all Parties submit to the jurisdiction of that Court for purposes of implementing and enforcing the terms of this Agreement.

## XXII.

## REPRESENTATIONS

By signing this Agreement, each of the Parties expressly represents and warrant as follows:

(a)      That it has read the foregoing Agreement, knows and understands the contents thereof, and has entered into this Agreement voluntarily and of its own volition.

(b)      That, in entering into this Agreement, it has not relied on any representation, warranty or promise made by any person, except for those expressly set forth herein.

(c)      That, in entering into this Agreement, it has been advised of its meaning and consequences by its legal counsel.

(d)      That it, or the person executing this Agreement on its behalf, has full power, capacity and authority to execute and deliver this Agreement.

[Signature page follows.]

IN WITNESS WHEREOF, the parties hereto have executed and delivered this Agreement on the day and year written.

AMERICAN CAMPUS COMMUNITIES SERVICES, INC.

By: _____

Name: Daniel Perry

Title: Vice President

Dated: 6/23/2020

TYASIA GUADALUPE, individually and on behalf of all Opt-In Plaintiffs

By: DAVID, KAMP & FRANK L.L.C., their counsel of record

By: _____
       Joshua M. David, Esq.

Dated: 6/23/2020

114976302